UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**JEAN DAVIS**,                                                                Case No. 3:10 CV 385

        Plaintiff,                                      Judge Jack Zouhary

     v.                                               REPORT AND RECOMMENDATION

**DANIEL W. BECK, et al.**,

        Defendants.                           Magistrate Judge James R. Knepp II

### Introduction

Plaintiff Jean Davis filed this action first in state court in 2006, which she dismissed in 2007. She then filed a complaint in the Northern District of Ohio in 2007, for which she sought and the Court granted dismissal in 2009. (Case No. 3:07 CV 2734). Plaintiff then filed the instant case in the Court of Common Pleas of Allen County, Ohio, on January 15, 2010. Defendants removed the case to this Court in February 2010. (Doc. 1).

All three cases involve Plaintiff's incarceration at the Allen County Jail on the evening of September 9, 2005 and the following morning. In the instant case, Plaintiff brings claims pursuant to 42 U.S.C. § 1983, alleging violations of the Eighth and Fourteenth Amendments. The Complaint does not contain separate counts, but asserts the following claims:

    1.     Excessive force;
    2.     Failure to intervene;
    3.     Failure to provide "timely treatment of Plaintiff's injuries"; and
    4.     Failure to train or supervise.

(Doc. 1-2).

Defendants filed a Motion for Summary Judgment. (Doc. 24). Plaintiff filed an Amended

Opposition (Doc. 32), to which Defendants Replied (Doc. 33).

The Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiff's complaint raises a federal question. The Motion was referred to the undersigned for a Report and Recommendation. (Non-document entry dated December 14, 2010). For the reasons described below, the undersigned recommends the Court grant the Motion.

## Background

Defendants attached eight sworn declarations with exhibits to their Motion. (Doc. 24-2 through 24-9). Included in the exhibits is a video recording[1] of the incident at issue. (Doc. 24-5). Plaintiff did not attach a single piece of evidence, affidavit, or declaration to either her original brief in opposition (Doc. 31) or her amended brief in opposition (Doc. 32). In both of her briefs, the only piece of evidence cited by Plaintiff, admissible or otherwise, is the video recording. Federal Civil Rule 56(c) requires parties to support factual assertions by citing to admissible evidence. The undersigned will not consider unsupported factual assertions, and any fact Plaintiff disputes without citing evidentiary support will be "considered undisputed for purposes of the motion" pursuant to Federal Civil Rule 56(e)(2).

On September 9, 2005, at 11:20 P.M., the Lima Police Department brought Plaintiff to the Allen County Jail on an intoxication charge. The Lima Police officer escorted Plaintiff to the receiving room and removed her handcuffs. Once there, Defendant Cory Lee, then a corrections

---

[1] Neither party disputes the admissibility of the video, and in fact both parties rely on it in their briefing. Further, the undersigned finds it admissible evidence. It is relevant, and its authenticity is settled by application of Federal Rule of Evidence 902(11)(B) and Sheriff Beck's sworn declaration (Doc. 24-5, at ¶ 8). Moreover, courts may rely on video evidence in determining excessive force claims on summary judgment. *Renz v. Willard Police Dep't*, 2010 WL 3789563, at *2 (N.D. Ohio).

officer at the Jail, attempted to receive Plaintiff, but she began to get very loud with him, saying she wanted a phone call and she should not have been arrested for intoxication. Lee told Plaintiff she needed to cooperate with the booking process and then she could make a call, but she refused to cooperate. Lee asked Plaintiff to remove all her jewelry, but she did not remove her necklace. After asking her several times to remove the necklace, she finally did, but she continued to argue with Lee about her arrest. Lee then asked Plaintiff to sit on a bench, but she did not comply. Lee asked her again, and Plaintiff said she did not have to sit down. At that time, Defendant Corporal Mark Wiremen told Lee to move Plaintiff to the drunk tank, which he did without incident. (Doc. 24-7, at paragraphs 2, 3, & 5, and Exhibit A).

About an hour later, at approximately 12:20 A.M. on September 10, 2005, Lee and Defendant Josh Davidson, also a corrections officer, went into the drunk tank to move Plaintiff to another cell that had a mattress and blanket. Once in the drunk tank, Davidson told Plaintiff they were going to move her to another cell with a mattress and blanket, but Plaintiff said she did not want to move. Davidson and Lee then left the drunk tank without incident. (Doc. 24-7, at Exhibit A).

At approximately 12:30 A.M., Plaintiff began to hit the drunk tank window with her fist. Davidson and Lee went back to the drunk tank, where Davidson asked Plaintiff to move away from the sliding door so he could open it. Plaintiff finally moved after being asked four times. Once the door was open, Davidson asked Plaintiff several times to take a seat, but she did not comply. Davidson placed his hand on Plaintiff's shoulder to try to get her to sit down, but she pulled away and attempted to swing at him, so Lee grabbed Plaintiff's left arm and pulled her momentum toward him and then to the floor. Once on the ground, Plaintiff was on her stomach; Davidson was at her

3

legs, attempting to secure them; and Lee was attempting to secure her left arm. Suddenly, Plaintiff turned over, causing Lee to lose his balance. Plaintiff also grabbed Lee's shirt pocket, which ripped, and she swung her fist, striking him on his jaw and knocking his glasses off his face. Lee swung his left fist, striking Plaintiff once just above the left eye. Plaintiff continued to struggle with the two officers, and Lee swung at her again. (Doc. 24-5; Doc. 24-7, at Exhibit A).

Davidson then positioned himself on top of Plaintiff's upper body, and she was turned onto her stomach. Plaintiff continued to wrestle with the officers, and Lee administered a half-second OC (oleoresin capsicum) spray to Plaintiff's face. Once Plaintiff was sprayed, she stopped resisting. Wireman then arrived in the drunk tank and helped to secure Plaintiff in handcuffs. After she was secured, all of the officers left the drunk tank without incident. (Doc. 24-5; Doc. 24-7, at Exhibit A; Doc. 24-9, at ¶¶2 & 3, & Exhibit A).

Around 12:46 A.M., Davidson and Lee went back to the drunk tank to sit Plaintiff up from lying on her stomach. Plaintiff refused, yelling she was going to contact the NAACP. Wireman arrived and explained to Plaintiff why she was in handcuffs and that she should sit up for her own safety (to be able to breathe more easily). But Plaintiff continued to refuse to get off her stomach. Wireman, Davidson, and Lee then left the drunk tank. (Doc. 24-5; Doc. 24-7, at Exhibit A; Doc. 24-9, at Exhibit A).

At 1:00 A.M., Davidson and Wireman entered the drunk tank to remove the handcuffs from Plaintiff so she could decontaminate her face with water. Wireman tried to explain to Plaintiff how to use the sink, but she again began yelling at the officers. The officers left the drunk tank again. (Doc. 24-5; Doc. 24-9, at Exhibit A).

At 1:10 A.M., Wireman entered the drunk tank to check if Plaintiff had suffered any injuries

4

during the altercation. Plaintiff refused to let him look at her, but he noticed a knot above her left eye. At 1:15 A.M., he placed a call to a jail nurse and explained what happened. The nurse said to give Plaintiff an ice pack to place over her eyebrow and to give her Tylenol if needed. At that time, Davidson asked Plaintiff if she wanted an ice pack for her eye, but she refused. (Doc. 24-5; Doc. 24-9, at Exhibit A).

## Standard of Review

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## Discussion

*Plaintiff's Concessions*

As an initial matter, Plaintiff concedes in her Opposition brief that summary judgment is appropriate with regard to her claims against Defendants Lieutenant John Allen, Deputy Mark Baker, and Corrections Officer Corey Wilson. (Doc. 32, at 4). The undersigned agrees because it is undisputed that Plaintiff had no contact with these Defendants during her detention. Summary judgment should be granted on all claims with regard to these Defendants.

5

*Qualified Immunity*

To prevail on a Section 1983 claim, a plaintiff must prove that some conduct by a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or other federal law. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). However, a defendant may be protected against such a claim by qualified immunity.

"The doctrine of qualified immunity generally shields state actors from liability under § 1983 based on their discretionary actions." *Thomas v. Cohen*, 304 F.3d 563, 568 (6th Cir. 2002) (citing *Anderson v. Creighton*, 483 U.S. 635, 638-40 (1987), and *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court held "if the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* at 202. There are two steps to this inquiry: "[f]irst, a court must decide whether the facts that a plaintiff has alleged (see Fed. Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. *Saucier*, 533 U.S. at 201. Second, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009). This two-step analysis may be performed in any order, and if either step is not met, defendants are entitled to qualified immunity. *Id.* at 818.

Defendants argue they are entitled to qualified immunity, and focus on the second step of the qualified immunity analysis – notice. However, what Defendants are arguing – there was no notice of a constitutional violation because there was no constitutional violation – is a roundabout way to argue the first step of the analysis. For the reasons described below, the undersigned finds defendants enjoy qualified immunity as to each claim brought by Plaintiff.

6

*Excessive Force*

To decide whether Plaintiff has presented evidence of a violation of her constitutional rights, the Court must first determine the source of the claimed right. *Phelps v. Coy*, 286, F.3d 295, 299 (6th Cir. 2002). The Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution all provide recourse for excessive force, depending "on the status of the Plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between." *Id.*

If the plaintiff is a free citizen at the time of the incident, the Fourth Amendment and its reasonableness standard applies. That standard requires the officer's use of force be objectively reasonable, balancing the cost to the individual against the government's interests in effecting the seizure. *Graham v. Connor*, 490 U.S. 386, 395-96 (1989). The officer's intentions are irrelevant under the Fourth Amendment standard. *Id.* at 397. If the plaintiff is a convicted prisoner at the time of the incident, the Eighth Amendment applies. *Id.* at 395, n. 10. The Eighth Amendment standard focuses on the official's "obdurancy and wantonness" and asks "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 319-21 (1986). Lastly, if a plaintiff is neither a free citizen nor a convicted prisoner, the more generally applicable due process considerations of the Fourteenth Amendment apply. *Darrah v. City of Oak Park*, 255 F.3d 301, 305-06 (6th Cir. 2001).

Here, at the time of the incident Plaintiff was neither a free citizen being seized, nor was she a convicted prisoner. Plaintiff briefly argues the Fourth Amendment standard applies because her detention was part and parcel of her arrest. (Doc. 32, at 2). This argument is not persuasive – Plaintiff was arrested by the Lima Police Department, and she was no longer in their custody during the events at issue, she was in the custody of the Allen County Sheriff's office. *See McDowell v.*

*Rogers*, 863 F.2d 1302, 1306 (6th Cir. 1988) ("[T]he seizure that occurs when a person is arrested continues throughout the time the person remains in the custody of the *arresting officers*.") (emphasis added). Therefore, the Fourteenth Amendment, and not the more lenient standard of the Fourth Amendment, applies to her claim.

The Fourteenth Amendment poses a "substantially higher hurdle" to an excessive force claim than does the Fourth Amendment's reasonableness test. *Darrah*, 255 F.3d at 306. "The substantive due process rights of the Fourteenth Amendment protect citizens from the arbitrary exercise of governmental power." *Id.* (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)). The question courts ask to determine whether conduct meets this threshold is whether the alleged conduct "shocks the conscience". *Id.* Where the implicated government actors

> are afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action . . ., their actions will be deemed conscience-shocking if they were taken with "deliberate indifference" towards the plaintiff's federally protected rights. In contradistinction, in a rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation . . ., public servants's reflexive actions "shock the conscience" only if they involved force employed "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith attempt to maintain or restore discipline."

*Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (quoting *Lewis*, 523 U.S. at 852-53).

Here, the situation was a "rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation." The video demonstrates Plaintiff was not only resisting being handcuffed but was also striking out against the corrections officers until she was handcuffed. (Doc. 24-5). The officers did not act maliciously solely for the purpose of causing harm, but as is apparent from the video, acted to subdue Plaintiff by striking her and spraying her with OC spray. After she was subdued, the officers handcuffed her and did not use further force. (*Id.*). The use of force here is not conscience-shocking, as defined by the case law.

*Claybrook*, 199 F.3d at 359.

Plaintiff has not shown facts establishing an excessive force constitutional violation. Defendants are therefore entitled to qualified immunity on the excessive force claim.

*Failure to Intervene*

Plaintiff includes a failure to intervene claim in her Complaint. (Doc. 1-2, at ¶ 18). In her brief in opposition, Plaintiff concedes that this claim is not based on failure to intervene in the initial use of force against Plaintiff, discussed above. She now argues her failure to intervene claim is based on Defendants leaving her handcuffed, face-down on the floor of the drunk tank. (Doc. 32, at 8-9).

"A police officer has a duty to act when he sees another officer using excessive force against an arrestee or pretrial detainee if the officer could realistically prevent that force and had sufficient time to do so." *Kepley v. Lantz*, 2007 WL 2085401, at *6 (N.D. Ohio) (citing *Davis v. Rennie*, 264 F.3d 86, 114 (1st Cir. 2001)). There must therefore be an underlying valid claim of excessive force claim for there to be a failure to intervene claim.

Although Plaintiff does not argue the failure to roll her over constitutes excessive force in that portion of her brief, for her to succeed on her theory of failure to intervene, leaving her on her stomach must be excessive force. But the Sixth Circuit has never held that leaving a bound suspect on her stomach constitutes excessive force, and has in fact gone out of its way to avoid addressing the issue. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004) ("This appeal gives us no cause to consider whether leaving a bound suspect on his or her stomach without more constitutes excessive force that violates a suspect's clearly established Fourth Amendment rights."). Plaintiff therefore, at a minimum, cannot meet the second qualified immunity step – that the claimed

9

violated right was "clearly established" at the time of the incident. *Pearson*, 129 S. Ct. at 815-16. Defendants enjoy qualified immunity as to the failure to intervene claim.

*Failure to Provide Medical Treatment*

Plaintiff's Complaint raises a claim of failure to provide timely medical treatment against all Defendants. (Doc. 1-2, at ¶ 19). Plaintiff does not address Defendants' arguments against this claim in her brief in opposition (Doc. 32), nor is there any explanation or support of the claim on record beyond that found in the Complaint.

The due process of the Fourteenth Amendment protects detainees such as Plaintiff from deliberate indifference to their serious medical needs that unnecessarily and wantonly inflicts pain. *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001). The test to determine whether "deliberate indifference" occurred has both an objective and a subjective component. The objective component requires a showing that the alleged deprivation posed a substantial risk of serious harm. To satisfy the subjective component, Plaintiff must show the official had a sufficiently culpable state of mind. *Id.* The Sixth Circuit has further explained:

> Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." . . . "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm may exist, and he must also draw the inference."

*Blackmore v. Kalamazoo County*, 390 F.3d 890, 895-96 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). Additionally, the court in *Blackmore* held:

> Most of the circuits hold that a medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.

*Id.* at 897 (citations and internal quotations omitted).

Here, there was no substantial risk of serious harm, and so there could not have been an awareness of a substantial risk of serious harm. Plaintiff had a knot over one eye, which would not and did not necessitate a doctor's attention. In fact, a nurse was consulted about the knot, and following her advice, an ice pack was offered to Plaintiff within an hour of her minor injury (which Plaintiff refused).

Plaintiff names other injuries in her brief in opposition – "foot, leg, and ankle injuries" – but does not cite any record evidence supporting these claims of injury. (Doc. 32, at 4). The undersigned will not consider asserted facts unsupported by admissible evidence. *See* Federal Civil Rule 56(e)(2).

Plaintiff has not shown a constitutional violation of failure to provide timely medical treatment, and all Defendants are entitled to qualified immunity on this claim.

*Failure to Train or Supervise*

Plaintiff's Complaint raises a claim of failure to train or supervise against Defendant Wireman.[2] (Doc. 1-2, at ¶ 20) Plaintiff does not address Defendants' arguments against this claim in her brief in opposition (Doc. 32), nor is there any explanation or support of the claim on record beyond that found in the Complaint.

A failure to train or supervise claim against a supervisor fails where there is no underlying constitutional violation. *See Swain v. Fullenkamp*, 2010 WL 1995609, at *4 (N.D. Ohio). As discussed above, Plaintiff has not shown any underlying constitutional violation.

Furthermore, "supervisory liability under Section 1983 cannot attach [for] a mere failure to

---

[2]Plaintiff also raises this claim against Defendant Allen, whom Plaintiff concedes should be dismissed from the case, and Defendant Beck, whom was dismissed from the case prior to the instant motion (Doc. 19).

11

act." *Id.* (citing *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). A supervisor must encourage or directly participate in a specific incident of misconduct in order to be actionable. *Id.* Here, Plaintiff presents no evidence that any of these two Defendants encouraged or directly participated in misconduct.

Plaintiff has not shown facts making out a constitutional violation of failure to train or supervise. Defendant Wireman thus enjoys qualified immunity on this claim.

## Conclusion

For the foregoing reasons, the undersigned recommends the Motion be granted and the case be dismissed.

s/James R. Knepp II<br>
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).